IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | No. 09 C 2822 |
| CMGT, Inc., | ) | |
| | ) | |
| Debtor. | ) | Judge Robert W. Gettleman |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| SPEHAR CAPITAL, LLC, | ) | On Appeal from the |
| | ) | United States Bankruptcy Court |
| Defendant / Appellant, | ) | for the Northern District of Illinois |
| v. | ) | Bankruptcy No. 04 B 31669 |
| | ) | Adversary No. 07 A 00838 |
| DAVID GROCHOCINSKI, Trustee, | ) | |
| | ) | |
| Plaintiff / Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

This appeal is taken from the judgment in an adversary proceeding (the "Adversary Proceeding") filed by Appellee Trustee David E. Grochocinski (the "Trustee") in the underlying bankruptcy case of CMGT, Inc. ("CMGT" or the "Estate"). In the Adversary Proceeding, the Trustee sought to determine the validity, extent, or priority of claims and interests of Appellant Spehar Capital, LLC ("Spehar") in the Estate. In response, Spehar raised affirmative defenses and filed a counterclaim in which it alleged that the Trustee had breached a post-petition financing agreement with Spehar.

The bankruptcy court held a bench trial on November 24 and 25, 2008, and on March 17, 2009, that court entered judgment in favor of the Trustee on all counts of its amended complaint and on Spehar's counterclaim. Spehar filed a timely notice of appeal with this court on March 27, 2009. This court remanded the matter to the bankruptcy court for the limited purpose of having that court entertain a Rule 60(b) motion by Spehar. On August 26, 2009, Spehar moved

pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024 for relief from the bankruptcy court's judgment. The bankruptcy court denied the Rule 60(b) motion on September 24, 2009.

This court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 158(a)(1) and 1334, and Fed. R. Bankr. P. 8001, *et seq.*

## **FACTUAL AND PROCEDURAL BACKGROUND**

Most of the facts and background are undisputed.[1] CMGT was incorporated in the state of Delaware in 1999 and was subsequently dissolved on March 1, 2002, by the Delaware Secretary of State for non-payment of taxes. CMGT was not authorized as a foreign corporation doing business in Illinois, nor did it have a registered resident office or agent with the Illinois Secretary of State's office.

On March 18, 2004, Spehar obtained a judgment in the amount of $17,045,780 and a permanent injunction against CMGT in the Superior Court of the State of California. On March 31, 2004, the judgment was domesticated in Illinois in Dupage County, Eighteenth Judicial Circuit (the "Illinois Court"). On April 7, 2004, Spehar filed two citation notices in the Illinois Court (collectively "Citations to Discover Assets"). The Clerk of the Illinois Court issued one citation and notice to "Louis J. Franco, President/CEO c/o CMGT, Inc." ("Franco") at 2 S 647 White Birch Lane, Wheaton, Illinois, and one to "CMGT, Inc., c/o Louis J. Franco" at the same address, which is Franco's home. The Clerk of the of the Illinois Court did not issue a citation direct to the Secretary of State of Delaware. Spehar served the Citations to Discover Assets on

---

[1] A more complete recitation of the facts are included in the bankruptcy court's opinions related to the instant case. Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.), 402 B.R. 262 (Bankr. N.D. Ill. 2009); Grochocinski v. Spehar Capital, LLC (In re CMGT, Inc.), 417 B.R. 69 (Bankr. N.D. Ill. 2009).

2

Franco at the Wheaton address.[2] Within several days, Franco sent copies of the citations to "All CMGT Investors" on behalf of CMGT.

Also in April 2004, Spehar served a copy of its domesticated judgment on the Delaware Secretary of State. Spehar asserts that it also served a third Citation to Discover Assets and Notice of Citation on the Delaware Secretary of State on April 12, 2004, who then forwarded the citation to "CMGT c/o Louis J. Franco" at the Wheaton address a day later. The Trustee contends that he searched the records of the Delaware Secretary of State and could not find documentation supporting Spehar's assertion. Franco, however, testified on May 7, 2004, before the Illinois Court that he received the Citations by personal service and from the State of Delaware.

On August 25, 2004, Spehar filed a petition for involuntary Chapter 7 bankruptcy against CMGT, and on September 21, 2004, the Trustee was appointed. CMGT had no assets of significant value. During the months of December 2004 through September 2005, Spehar and the Trustee negotiated a post-petition financing agreement which outlined a plan whereby Spehar agreed to loan the estate litigation expenses for the Trustee to prosecute a malpractice claim on behalf of the Estate. On June 14, 2005, the parties memorialized their post petition-financing agreement in a letter ("Financing Agreement"). The Financing Agreement contained a provision stating that the Trustee would "take all necessary or appropriate actions to void the UCC-1 financing statements or other liens that CMGT's shareholders or persons otherwise affiliated filed with the IL Secretary of State Illinois [sic] on or about 12/18/2003." On July 15, 2005, the

---

[2] This the same address listed for CMGT in the underlying bankruptcy case and the instant action.

Trustee filed with the bankruptcy court an Application to Enter into Post-Petition Secured Financing and Other Relief (the "Financing Motion") and requested that the bankruptcy court issue an agreed Financing Order to allow the Estate to obtain credit to pursue a malpractice action against Mayer, Brown, Rowe, & Maw ("Mayer Brown"), the law firm who had provided legal services to CMGT. As part of the Financing Agreement, Spehar was to make specific advances to the Estate in return for a share in the net recovery from the potential legal actions. The Financing Motion stated in relevant part:

> Spehar . . . is the holder of a judgment against [CMGT] in the sum of $17,045,780.00 plus interest and costs. . . . The judgement was duly registered in the Circuit Court of the 18th Judicial Circuit, Dupage County. . . . A citation to discover assets was issued [by Spehar] and served upon the former president of [CMGT], Louis Franco. . . . To the extent that assets are available in this matter, Spehar . . . by virtue of the citation to discover assets which was served upon [CMGT] more than 90 days prior to the filing of the petition has a valid perfected lien.

After an uncontested hearing on the Financing Motion, the bankruptcy court entered an order ("Financing Order") on September 2, 2005, adopting the language of the parties' agreed proposed order. The Financing Order explicitly stated "IT IS HEREBY ORDERED . . . by virtue of its Citation to Discover Assets, Spehar has a valid and perfected lien on the proceeds of any [malpractice action] recovery" and that "[t]he Trustee shall take all reasonable and appropriate actions to void all liens that are asserted to be superior to Spehar's valid and perfected lien in CMGT's assets . . . ."

The parties initially complied with the terms of the Financing Order. On September 7, 2005, Spehar paid the Trustee $5,000.00 pursuant to the Financing Order. The Trustee employed special counsel to pursue the malpractice action, and special counsel filed an action in August 2006 in the Circuit Court of Cook County, Illinois, which was removed to the U.S.

4

District Court for the Northern District of Illinois on October 10, 2006.[3] That action is currently pending.

On March 22, 2006, Spehar filed a Proof of Claim against CMGT in the bankruptcy proceedings, asserting a secured claim in the amount of $17,045,780.00, that it subsequently amended asserting a secured claim of $13,427,560 and an unsecured non-priority claim in the amount of $3,618,220.

The Trustee filed 24 adversary proceedings against investors in CMGT. On March 26, 2007, the Trustee filed a Motion for Approval of Compromises of Avoidance Actions "against individuals or entities that hold interests in the Debtor's equity (the 'Investors')" to "void, or, in the alternative . . . avoid" certain UCC liens that claimed secured interests in the Estate's assets superior to Spehar's perfected lien. Spehar objected to the motion asserting that an "avoidance and retention by the Trustee" but not "voiding" the claimed security instruments was in direct violation of the Financing Order. The Trustee responded, denying any such obligation under the Financing Order and claiming that Spehar had a secured lien only against the post-petition funds advanced by Spehar and nothing more. On August 28, 2007, the bankruptcy court entered an order granting the Trustee's motion over Spehar's objections.

Spehar continued to oppose the Trustee's settlement with the Investors and refused to make an advance payment to the Estate required under the Financing Order. In response, the Trustee filed an Application to Vacate the Financing Order ("Motion to Vacate") on July 26, 2007. On August 30, 2007, the Trustee also filed the underlying Adversary Proceeding seeking clarification of the status of Spehar's pre-petition lien on the assets of the Estate. The

---

[3] Grochocinski v. Mayer Brown Rowe & Maw LLP, No. 06-C-5486 (N.D. Ill.).

bankruptcy court treated the Motion to Vacate as a Rule 60(b) Motion, and on October 5, 2007, it denied the motion, ruling that the Finance Order was a final and appealable order entered almost two years before the motion was filed and that there were no valid, timely grounds for reconsideration under Rule 60.

The order denying the Trustee's motion to vacate was never appealed. The bankruptcy court, however, allowed the Adversary Proceeding to move forward. Spehar filed an Answer and Counterclaims, as well as numerous dispositive motions. The bankruptcy court denied all of Spehar's motions and held a bench trial November 24 and 25, 2008. During the November 24 proceedings, the bankruptcy judge stated that he had not intended to, and did not, make any findings in the Financing Order "relative to the perfection, propriety, validity, et cetera, of the Spehar claim prepetition lien arising because of the citation proceedings in DuPage County state court."

The court entered judgment on March 17, 2009, holding that Spehar did not show that it had a valid lien on the assets of CMGT, but rather showed that it had an uncontested, unsecured allowed claim. It also found that Spehar had not demonstrated that the Trustee breached any obligation to Spehar, and that the Trustee's claims were not barred under the doctrines of promissory estoppel or laches.

Spehar filed a timely notice of appeal with this court on March 27, 2009. This court remanded the matter to the bankruptcy court for the limited purpose of having that court entertain a Rule 60(b) motion by Spehar. On August 26, 2009, Spehar moved pursuant to Fed. R. Civ. P. 60(b) and Fed. R. Bankr. P. 9024 for relief from the bankruptcy court's judgment

based on alleged newly discovered evidence. The bankruptcy court denied Spehar's Rule 60(b) Motion on September 24, 2009.

## DISCUSSION

Spehar presents numerous questions on appeal, one of which is dispositive of all the pending issues: whether the bankruptcy court erred by permitting the Trustee to challenge the court's findings in the Finance Order through the Adversary Action. On appeal from a judgement of the bankruptcy court, the district court reviews issues of law de novo and may set aside factual findings only if they are clearly erroneous. Fed. R. Bankr. P. 8013.

At the heart of the dispute in the eyes of the bankruptcy court was whether the service of the Citations to Discover Assets by Spehar resulted in the attachment of a statutory lien on CMGT's personal property as Spehar claims, or whether the service was ineffective to impose such a lien, as the Trustee asserts. The crux of the appeal, however, hinges on the contents of the Financing Order issued on September 2, 2005, and whether, as a consequence of entry of the Financing Order, Spehar was relieved from the burden of proving that its Citations to Discover Assets were properly served on CMGT.

The bankruptcy court entered the Financing Order under 11 U.S.C. § 364, which outlines procedures by which a bankruptcy trustee may obtain credit on behalf of an estate. Although the bankruptcy court did not specify under which subsection of § 364 the Financing Order was entered, subsection (d) applies here. It provides that:

> (1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if--
>   (A) the trustee is unable to obtain such credit otherwise; and
7

  (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
 (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

In the U.S. Bankruptcy Court for the Northern District of Illinois, Local Rule 4001-2 requires that all financing requests under § 364 must be heard by motion. The agreed Financing Motion submitted by the Trustee included unambiguous factual statements respecting the validity, perfection, and amount of Spehar's pre-petition lien, but did not highlight the corresponding provisions within the proposed order or provide a summary of such highlights in conformity with the L.R. 4001-2.[4] Notwithstanding these imperfections in the form of the notice

---

[4] L.R. 4001-2(A)(2) states:
> (2) Provisions to be Highlighted. All Financing Motions must (a) recite whether the proposed form of order or underlying cash collateral stipulation or loan agreement contains any provision of the type indicated below, (b) identify the location of any such provision in the proposed form of order, cash collateral stipulation or loan agreement, and (c) state the justification for the inclusion of such provision:
>
>    * * *
>
> (b) Provisions or finding of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties in interest at least 75 days from the entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters.
>
>    * * *
>
> (3) All Financing Motions must also provide a summary of all provisions that must be highlighted under section (A)(2) of this Rule and a summary of the essential terms of the proposed use of cash collateral or financing, including . . .
>
>    * * *

(continued...)

8

of the Financing Motion, the Trustee did not raise L.R. 4001-2 in seeking to vacate the Financing Order or at any other time, and the bankruptcy court did not exercise its discretion and deem any of the provisions of the Financing Order unenforceable based on the Local Rule.

The agreed Financing Motion filed in conjunction with the proposed order included explicit language detailing Spehar's pre-petition lien. The proposed order, identical to that issued by the bankruptcy court, which was drafted and agreed upon by both Spehar and the Trustee, included the statement that "by virtue of its Citation to Discover Assets, Spehar has a valid and perfected lien on the proceeds of any such recovery [on the Malpractice Claim]." This same language appeared in the proposed Financing Order that both parties signed as agreed. The Trustee did not object to this language because he allegedly claims to have believed at the time that Spehar held a perfected lien on CMGT's personal property. The Trustee now argues that he interpreted the language as a "recital" rather than as a term of the agreement, and believed that he could later move to avoid Spehar's lien if he was to learn that Spehar was not entitled to status as a secured creditor.

Generally, orders authorizing postpetition financing under 11 U.S.C. § 364, such as the one here, are final orders. <u>Keltic Fin. Partners, LP v. Foreside Mgmt Co, LLC (In re Foreside Mgmt. Co., LLC)</u>, 402 B.R. 446, 450 (1st Cir. B.A.P. (Me.) 2009). If the Trustee had any doubt about the validity of Spehar's lien, he had sufficient time to investigate prior to entry of the

---

[4](...continued)
    (5) The court may deem unenforceable any provision not highlighted as required under section (a)(2) of this Rule.

Financing Order, and to timely move to amend or vacate the Financing Order.[5] Instead, he waited almost two years before seeking to attack the order through a motion to vacate (which was denied) and the Adversary Proceeding. Moreover, the Trustee brought its Motion to Vacate on the separate ground that Spehar had failed to fulfill a payment obligation under the Finance Order, rather than on the ground that the Financing Order included erroneous findings.

As discussed above, at a status hearing in October 2007, the bankruptcy court agreed with the Trustee, stating that while the Financing Order was a final order subject to appeal, because the court had not conducted an evidentiary hearing on the merits of Spehar's pre-petition lien it had not intended that language, which was merely a "recital," to be binding.[6] Respectfully, the bankruptcy court was wrong, because the language in the Financing Order was not included in a preamble, but in the main body of the Order after the words "IT IS HEREBY ORDERED."

Moreover, a formal evidentiary hearing was not necessary to test the factual findings made by the bankruptcy court. Notice and hearing were properly provided, and since there were no objections or concerns raised by the parties, or any one else, the bankruptcy court was not required to hold a formal evidentiary hearing. While it may not have been the intention of the bankruptcy court to make any factual findings in relation to Spehar's pre-petition lien, the

---

[5] Fed. R. Civ. P. 60(b) provides for relief from a judgment or order of the court for (1) mistake, (2) newly discovered evidence, (3) fraud or misconduct by the opposing party, (4) a void judgment, (5) satisfaction, release, or discharge of judgment, or (6) for any other reason that justifies relief. A Rule 60(b) motion must be made within a reasonable period of time, that being no more than one year after entry of judgment for reasons (1), (2), and (3).

[6] The bankruptcy judge did not explicitly use the word "recital" at the October 5, 2007, status hearing, but used it in this same context in a later written opinion denying Spehar's motion for judgment on the pleadings on March 12, 2008.

10

language of the Financing Order unambiguously found that Spehar had a valid perfected lien, and the court never clarified a contrary intention in a timely amended order. To the contrary, the bankruptcy court refused to vacate the order because it had become final and appealable almost two years before the Trustee sought to vacate it, and because it found that the Trustee raised no grounds under Rule 60 within an allowable period of time to warrant reconsideration.

Thus, although the Trustee had ample opportunity to file a timely motion, his failure to do so could not be remedied by filing a separate Adversary Proceeding to collaterally attack the findings in the Order that Spehar had a valid, perfected pre-petition lien. Although such a proceeding, if timely filed, could have been utilized to determine the validity of Spehar's lien, the bankruptcy court had already entered a final order that included a finding confirming the validity of the lien. This constituted an impermissible end-run around the failure to file a timely motion to vacate or to appeal from the denial of the Trustee's 60(b) motion. Therefore, the bankruptcy court erred when it entertained the Adversary Proceeding. By allowing the Adversary Proceeding to be prosecuted by the Trustee, the bankruptcy court in effect vacated the Financing Order after ruling that there were insufficient reasons to do so under Rule 60(b).

For the reasons stated above, the judgment of the bankruptcy court is vacated, and the case is remanded for further proceeding consistent with this opinion.

**ENTER:** February 2, 2010

_____
**Robert W. Gettleman
United States District Judge**